[Cite as *State v. Herr*, 2014-Ohio-4876.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,               CASE NO.  9-14-12

     v.

ANNE M. HERR,                     O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 13-CR-434

**Judgment Affirmed**

Date of Decision:   November 3, 2014

APPEARANCES:

    *Dustin J. Redmond, Jr.* **for Appellant**

    *Adam Meigs*  **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant Anne M. Herr ("Herr") appeals the February 28, 2014 judgment of the Marion County Common Pleas Court sentencing Herr to one year of community control after she was found guilty in a jury trial of Permitting Drug Abuse in violation of R.C. 2925.13(B)/(C)(3), a felony of the fifth degree.

{¶2} The facts relevant to this appeal are as follows. On August 22, 2013, Herr was indicted for Permitting Drug Abuse in violation of R.C. 2925.13(B)/(C)(3), a felony of the fifth degree. (Doc. 1). Herr was arraigned on August 30, 2013 and pled not guilty to the charge. (Doc. 12).

{¶3} On September 13, 2013, the State filed a Bill of Particulars indicating that the charges stemmed from a June 7, 2013, incident wherein Herr leased "a room at the America's Best [Value] Inn * * * in the city of Marion * * * [and] knowingly allowed Darryl Dixon to sell cocaine in the room while she passively watched from the bed." (Doc. 20). The Bill of Particulars also indicated that there was a small child present in the room during the commission of the crime. (*Id.*)

{¶4} The case proceeded to a jury trial, which was held January 16, 2014. At trial the State first called Andrew Isom, a detective with the Marion City Police Department who also worked as part of the MARMET Drug Task Force conducting drug-related investigations. (Tr. at 93-94). Detective Isom testified that on June 7, 2013, he got a call from a confidential informant ("CI") named

Roxie Welch wherein Roxie told him that she could purchase crack-cocaine from a black male she knew only as "Diesel." (Tr. at 103). Detective Isom testified that he used CIs regularly in controlled drug buy operations and that he had used Roxie on numerous occasions previously. (Tr. at 100).

{¶5} Detective Isom testified that he originally knew Roxie as a cocaine user/crack smoker and at one point he had asked her if she was interested in working for him as a CI. (Tr. at 101). Detective Isom testified that Roxie originally said no. (*Id.*) However, Detective Isom testified that a couple of weeks later Roxie contacted him and stated that she was trying to stay clean and move out of the Marion area so she wanted to participate as a CI. (*Id.*) Detective Isom testified that altogether Roxie made more than 30 controlled buys from approximately 15-25 different individuals. (Tr. at 102).

{¶6} Detective Isom testified that when Roxie contacted him on June 7, 2013, he then went and picked up Roxie and she called Diesel, who told Roxie where to meet for the purchase. (Tr. at 104). Detective Isom testified that Roxie arranged to purchase $50 of crack-cocaine. (Tr. at 107).

{¶7} Detective Isom testified that prior to the buy he searched Roxie and placed video and audio recording devices on her. (Tr. at 105). Detective Isom testified that he then drove Roxie to the site as directed, an America's Best Value

Inn, and waited on the other side of the building, listening to the live audio from the recording device. (Tr. at 106, 108).

**{¶8}** Detective Isom testified that the buy was "really quick" and afterward Roxie returned to the pre-arranged meeting spot. (Tr. at 108). Detective Isom identified the time of the transaction as approximately 12:11 p.m. (Tr. at 160). Detective Isom testified that Roxie delivered the suspected crack-cocaine she had purchased from Diesel and that he field tested it. (Tr. at 112). Detective Isom testified that his field test indicated the presence of cocaine and that he then secured the substance so that it could be sent to BCI for testing. (*Id.*)

**{¶9}** Detective Isom testified that he only knew the person that Roxie had purchased the suspected crack-cocaine from by his street name as "Diesel" so he then investigated to try to find out who Diesel was. (Tr. at 115). Detective Isom testified that he contacted the motel to see who the room in which the sale was conducted was rented to, and found out that it was rented to Herr. (Tr. at 116). Detective Isom testified that he then looked into Herr and found that she was connected to Darryl Dixon, whose photograph matched the individual "Diesel" who had sold Roxie the crack-cocaine in the video of the transaction. (*Id.*)

**{¶10}** On cross-examination Detective Isom testified that they did not immediately bust Diesel and Herr right after the sale because they were still using Roxie as a CI at that time. (Tr. at 121). Detective Isom also testified that normal

check-out time at the motel was noon, which would have been just before the transaction; however, Detective Isom further testified that he spoke to an employee of the motel who informed him that the motel was trying to get Diesel and Herr out of the room. (Tr. at 125, 127).

{¶11} Detective Isom did testify that he was not ultimately involved in Herr's arrest, that he never spoke to her and that he never interviewed her. (Tr. at 127). Detective Isom also testified that Diesel was indicted for Trafficking but had not been located. (Tr. at 127).

{¶12} The State next called the CI, Roxie. Roxie testified that she had a problem with drugs in her life and wanted to get off them and get dealers off the streets to make it harder for her to get them so she eventually agreed to be a CI for Detective Isom. (Tr. at 129). Roxie testified that she was paid $70 per drug buy and that she did more than 20-30 buys off of 20 different people over a span of two to three months. (Tr. at 130).

{¶13} Roxie testified that on June 7, 2013 she called "Diesel" who she had known from years on the streets as a drug dealer. (Tr. at 132). Roxie testified that she asked Diesel if he could "help her out." (Tr. at 135); (State's Ex. 2). Roxie testified that Diesel told her where to meet, which was the America's Best Value Inn. (State's Ex. 2). Roxie testified that Detective Isom picked her up and drove her to the destination. (Tr. at 133).

**{¶14}** Roxie testified that prior to the buy she was searched and given a purse that had video and audio in it. (Tr. at 133-134). She testified that she then went up to the motel room to make the buy. At this time the State introduced video of the buy, which was shown to the jury. The video showed Roxie walking up to the motel room and then into the room. (State's Ex. 1). Inside the room, directly in front of her was a woman with her back turned, standing in front of a table. (*Id.*) Also standing by the table was Diesel. (*Id.*) The woman moved out of Roxie's way, away from the table, and sat on a motel bed across the room with a young girl. (*Id.*) Diesel and Roxie made an exchange, and then Roxie exited the room and went back to Detective Isom's vehicle. (*Id.*)

**{¶15}** Roxie testified that she had never seen the woman in the motel room before that day, but she identified the woman in the motel room as Herr in the courtroom. (Tr. at 142). Roxie testified that Diesel was preparing "the dope" in front of the woman at the table Herr stepped away from. (Tr. at 143). Roxie testified that there was more cocaine in the room visible on the room's table. (Tr. at 145). Roxie testified that there was an "8 ball" on the table, which she stated was roughly 3.5 grams. (Tr. at 156).

**{¶16}** On cross-examination Roxie testified that she had dealings with Diesel off and on for many years. (Tr. at 147). Roxie testified that she was clean from drugs as of the trial and had been since she agreed to be a CI. (Tr. at 149).

Roxie testified that she had a criminal history of various drug possession offenses and weapons convictions. (Tr. at 154). She testified that she never talked to Herr while she was in the room making the buy. (Tr. at 155).

{¶17} The State next called Sanjay Desai, who is both manager and partial owner of the America's Best Value Inn where the transaction took place. (Tr. at 162). Desai testified that the room in question was rented to Herr for one night on June 6, 2013 with checkout on June 7, 2013. (Tr. at 165). Desai testified that checkout time at the motel was typically at noon, but the motel would regularly work with guests and give them some leeway from between 30 minutes up to an hour. (Tr. at 167). Desai testified that he had never charged a guest an extra night for staying too long. (Tr. at 168).

{¶18} On cross-examination Desai testified that he does not know Herr and that he does not know what time she checked out, or if she actually stayed late. (Tr. at 168). Desai testified that her tenancy was legally concluded at noon and that he expected guests to be out at noon. (Tr. at 172). Desai testified, however, that if Herr stayed late, it would show up on her bill as two nights. (Tr. at 176). Desai testified that the number of nights listed when Herr checked out was "2," though she did check out on June 7, 2013 and only paid for the single night. (State's Ex. 5).

{¶19} The State next called Kelsey Degan, a forensic scientist specializing in drug chemistry for BCI. Degan testified that she tested the drugs that were submitted to her from this investigation and she determined that they contained .2 grams of cocaine.[1] (Tr. at 184).

{¶20} At the conclusion of Degan's testimony, the State rested its case. Herr then made a Crim.R. 29 motion for acquittal, which was denied after some discussion by the trial court.

{¶21} Herr then presented her case-in-chief, taking the stand herself. Herr testified that she met "Diesel" in 2005 and that they had a relationship and a child together. (Tr. at 220). Herr testified that the relationship came to an end after an incidence of domestic violence in 2011. (*Id*.)

{¶22} Herr testified that in June of 2013 when the alleged transaction took place she lived in Columbus and would drive to Marion to meet with Diesel after their romance ended to facilitate parenting time for Diesel. (Tr. at 222). Herr testified that she would meet Diesel at a motel so that she knew where her daughter was when Diesel was spending time with her. (*Id*.) Herr testified that this had happened approximately 7 or 8 times previously. (Tr. at 223).

{¶23} Herr testified that on the date of the alleged incident Diesel slept late and she was having difficulty getting him ready to go near checkout time. (Tr. at

---

[1] The substance in this case was apparently tested twice, according to Degan, and had originally contained .3 grams of cocaine. (Tr. at 193).

225). Herr testified that the housekeeper knocked and that she asked for a few more minutes. (*Id*.) Herr testified that she then was gathering some things from her purse when a woman walked in the door. (Tr. at 227). Herr testified that she did not know the woman and walked over and sat on the bed with her daughter when the woman came inside. (*Id*.0

{¶24} Herr testified that she did not see an 8-ball of cocaine on the table, that she did not know Diesel was a drug dealer and that they had not been around each other on a daily basis since November of 2011. (Tr. at 228-229). Herr testified that she had never seen Diesel sell drugs and that she did not permit him to do so that day. (Tr. at 233). Herr testified that she did not say anything about the girl coming in the room to Diesel because she did not want to start an argument with Diesel. (Tr. at 228). Herr testified that Diesel made no indication as to who the woman was or what she wanted.

{¶25} On cross-examination Herr testified that she did not know Diesel to work and she did not know where he got his money. (Tr. at 239). She testified that she did not pay any attention to what was on the table on the morning of the incident and she did not know that a drug deal was taking place. (Tr. at 241). Herr testified that she did not simply leave at checkout time without Diesel because she had picked Diesel up and needed to drop him off. (Tr. at 246).

{¶26} At the conclusion of Herr's testimony, the defense rested. At the close of evidence Herr then renewed her Crim.R. 29 motion, which was again denied by the trial court. The parties subsequently gave closing arguments, and the trial court provided instructions to the jury. The jury returned a guilty verdict on the sole count against Herr.

{¶27} Herr was ultimately sentenced to one year of community control. (Doc. 76). A judgment entry reflecting this sentence was filed February 28, 2014. (*Id.*) It is from this judgment that Herr appeals, asserting the following assignment of error for our review.

**ASSIGNMENT OF ERROR**
**THE TRIAL COURT ERRED WHEN IT OVERRULED DEFENDANT'S CRIMINAL RULE 29 MOTION TO DISMISS THE CHARGED OFFENSE DUE TO A LACK OF SUFFICIENT EVIDENCE.**

{¶28} In her assignment of error, Herr contends that the trial court erred by overruling her Crim.R. 29 motion to dismiss. Specifically, Herr argues that the State produced insufficient evidence that she actually permitted the drug sale rather than merely being present at the time of the transaction, and that the State did not present evidence that Herr had control or tenancy of the premises at the time of the sale because her lease on the room ended at noon.

{¶29} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency

is a test of adequacy. *Id.* When an appellate court reviews a record upon a sufficiency challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard,* 104 Ohio St.3d 54, 2004–Ohio–6235, ¶ 77, quoting *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶30} In this case, Herr was found guilty of Permitting Drug Abuse in violation of R.C. 2925.13(B)/(C)(3), which reads,

> **(B) No person who is the owner, lessee, or occupant, or who has custody, control, or supervision, of premises or real estate, including vacant land, shall knowingly permit the premises or real estate, including vacant land, to be used for the commission of a felony drug abuse offense by another person.**
>
> **(C)(1) Whoever violates this section is guilty of permitting drug abuse.**
>
> **\* \* \***
>
> **(3) Permitting drug abuse is a felony of the fifth degree, and division (C) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender, if the felony drug abuse offense in question is a violation of section 2925.02 or 2925.03 of the Revised Code.**

{¶31} The requisite culpable mental state for this offense, "knowingly," is defined in R.C. 2901.22(B). It reads, "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or

will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶32} On appeal, Herr makes two separate arguments challenging the sufficiency of the evidence to convict her. The first is that Herr did not "knowingly" permit the room to be used for the sale of crack-cocaine. Herr argues that neither the CI nor Diesel interacted with Herr during the sale, which lasted only a few seconds. Herr further argues that she did not set up the transaction or know the CI. Herr contends that she was merely present for the transaction, which was not sufficient to sustain a conviction. In contrast, the State argues that the requisite mental state of "knowingly" can be inferred from the facts and circumstances, and that the evidence supports such an inference here. We agree with the State's argument.

{¶33} At trial, evidence was presented through the testimony of the CI that there was an "8-ball," or roughly 3.5 grams, of crack-cocaine positioned on the table in the motel room in plain view directly in front of Herr when the CI entered the room. In addition, neither Diesel nor the CI did anything to try and conceal the transaction that took place from Herr. Further, the CI testified that she had known Diesel as a "24/7" drug dealer for "at least" four years.

{¶34} Thus under these facts and circumstances, when *viewed most favorably to the prosecution*, we find that a reasonable juror could infer from

testimony regarding Diesel's history and Herr's proximity to the unconcealed drugs and the drug sale that Herr knowingly permitted the sale to occur. Therefore Herr's argument on this issue is not well-taken.[2]

{¶35} Herr's next argument is that the State produced insufficient evidence that she had the requisite control of the motel room at the time of the sale. She contends that checkout time was at noon, and that the undisputed time of the drug transaction was 12:11 p.m., eleven minutes after the expiration of the room's lease.

{¶36} Despite Herr's contention that the lease of the motel room concluded at noon, there was sufficient evidence for the jury to determine that Herr still had custody or control of the room in question after checkout time. The motel's owner/manager testified that he regularly gave tenants leeway of between 30 minutes to an hour to be out of the rooms. Detective Isom testified that Herr asked for more time to checkout of the motel room. It is not disputed that Herr continued to occupy the motel room after the posted checkout time. That she was able to inform the housekeeper that she needed more time after checkout time and received that time illustrates that Herr was still exercising control over the room at

---

[2] We would note that the jury was specifically instructed in this case that the "[m]ere presence of [Herr] at the time and place of the offense of trafficking cocaine is committed is not sufficient evidence to constitute the offense of permitting drug abuse[.]" (Tr. at 273). Thus the jury was completely aware that simply by being present at the time of the sale did not make Herr guilty of the crime, and as we have stated, there was evidence to support Herr's knowledge.

the time of the drug transaction. Thus Herr's argument on this issue is also not well-taken. Therefore, Herr's assignment of error is overruled.

{¶37} For the foregoing reasons Herr's assignment of error is overruled and the judgment of the Marion County Common Pleas Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**